## Commonwealth v. Xakellis

*David J. Brightbill,* Assistant District Attorney, for Commonwealth.

*John F. Pyfer, Jr.,* for defendant.

WALTER, *J.,* February 13, 1976—Defendant's motions to quash citation come before us after the development of unusual circumstances, though legal proceedings commenced normally enough.

Mr. Xakellis was stopped by State Trooper S. K. Hinman on October 23, 1974, for failing to stop for a legally posted stop sign in Lebanon County. The officer obtained needed information from defendant's operator's license—his name and address. He told defendant a citation would be issued later by mail because he, the officer, had to proceed to the scene of an accident, a call to which he was answering when he observed the stop-sign violation. In due course, defendant received a citation in the name of "George Charles Xakellis" by certified mail, pleaded not guilty and requested a hearing. The latter was conducted, defendant's motion to dismiss on two different grounds were overruled, he was found guilty and appealed seasonably.

Subsequently, Mr. Pyfer as a result of a phone conversation with Mr. Brightbill, sent the latter an application to quash citation setting forth these reasons: (1) The proceedings were instituted in violation of Pa. R. Crim. P. 51 in that the officer failed to issue a citation to defendant at the scene as required by the rule then in effect; and (2) the citation was defective, failing to conform to Pa. R. Crim. P. 52 in that defendant's name is George *Christopher* Xakellis.

Through Mr. Brightbill's inadvertent oversight,

caused by moving of the District Attorney's office, the application was mislaid and not filed as apparently promised.

Furthermore, the appeal from the summary hearing decision was not listed at first because the application was known by the district attorney to be pending. When the appeal was later listed for December 4, 1975, defendant filed the instant motion to quash on October 10, 1975, listing as predication the failure to list the case for hearing within 180 days as allegedly required by Pa. R. Crim. P. 1100. The first motion or application was then filed October 31, 1975, and all three issues were argued before this court.

Defendant contends, initially, the process by which the citation was mailed to him is fatally faulty under Rule 51 as it then existed. That rule's wording, in pertinent part, was:

"A. Criminal proceedings in summary cases shall be instituted [by]:

"(1) A citation issued to the defendant when the offense is a summary offense under the Vehicle Code, provided the police officer is in uniform. . . ."

He urges a certified mailing of a citation in this case does not comply with the Rule and is contra to the procedure strictly required by the Pennsylvania Rules of Criminal Procedure. He cites as support Commonwealth v. Ebersole, 62 D. & C. 2d 224 (Centre County, 1973), and Commonwealth v. McCauley, 62 D. & C. 2d 458 (Beaver County, 1973).

But the Court of Common Pleas in Centre County refused a motion to quash based on an alleged procedural defect emanating from the question of jurisdiction. It ruled only that Ebersole be

given proper notice as to time and date of hearing as required by due process; jurisdiction already had been conferred by Ebersole's plea of not guilty and Ebersole had not been prejudiced by the delay in the use of proper procedure. This court sees no sustenance for defendant there.

Moreover, the learned opinion of Judge Kline in Beaver County is distinguishable on its facts. There, a motor vehicle violation was construed originally by a district magistrate as a summary offense: nine months later, he discovered it was graded a misdemeanor. Defendant, who elected to pay the fine and costs under the summary procedure, was arraigned and bound over for grand jury. The latter subsequently indicted him. The court quashed the indictment, citing Green v. United States,355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 199 (1957), wherein the Supreme Court held: "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . .", a situation not extant here.

We are constrained to look to the substance of Rule 51 as it existed both before and after the form it possessed at the time of the violation in question, as well as the exigencies prevalent at the moment it was committed. Rule 51, entitled "Means of Instituting Proceedings in Summary Cases" became effective January 1, 1974. It combined former Rules 107 and 131 with the summary case provisions of former Rule 102. In essence, those earlier rules, according to the language embodied in 131 and 107, gave a police officer who observed the

commission of a summary offense, the discretion to issue a citation to the offender directly or to file a complaint with the proper issuing authority who then, under most circumstances, would issue a summons.

In its form effective September 1, 1975, Rule 51A(1)(b) allows for situations as that at bar where it is not feasible for the officer to issue a citation to the offender. Again, the issuing authority in those instances shall send out a summons. It is obvious the rules committee overlooked the "loophole" it was creating in 1974; it masterfully cured it late in 1975.

Now, it forcefully can be argued "a rule is a rule is a rule." However that might be, we are not persuaded as to its merits in this case. With the posture in which we find law enforcement currently, under fire from different levels of concern—the accused individuals as well as the bystanding public, with disrespect for law itself and the rights of others running rampant, the courts must regird their vigilance against the onslaught of hypertechnicality in matters of procedure. It is, of course, the eternal duty of attorneys to test the efficacy of laws in order ultimately to strengthen them. But it is the obligation of the court to weigh the rights of the public and law enforcement sectors, always with a view toward and desire for evenhandedness. While a court must not be like the proverbial willow reed bending to every compelling wind, it must consider the adverse effects on both sectors to be caused by honoring procedural technicalities where the substantive rights of a citizen-accused have not been prejudiced. See the learned opinion of Judge Coffroth in Commonwealth v. Schlotthauer, 61 D. & C. 2d

170 (1972), and the relevant case citations he employs.

We find defendant to be in no less a position by reason of the method used in serving him with the citation/summons than if Officer Hinman had served him directly with the citation on the spot.

We now come to defendant's argument the citation/summons received by him was fatally defective under Rule 52A(1)(b) because the wrong name appeared on it. That rule states, in pertinent part: "Every citation . . . shall contain: . . . (b) the name and address of the defendant. . ." It would appear at first blush that defendant is correct in his contention. However, resort must be had to Rule 150, Pa. R. Crim. P. entitled: "Defects in Complaint, Citation, Summons or Warrant." There, it is written: "If a . . . citation, summons . . . contains a substantive defect, the defendant shall be discharged . . ." Comment to the rule describes the term "substantive defect" in this wise: "Substantive defects would include those cases in which the defendant's identity cannot be determined . . ."

Here, defendant *was* identified by the arresting officer at the initial hearing: he also received in the mail the citation/summons from the district justice. This court is not persuaded it has a substantive defect on its hands; thus, this argument of defendant falls, also.

Finally, defendant avers the citation must be quashed because of his appeal from the district justice's decision has not been heard within the 180 days prescribed by Pa. R. Crim. P. 1100. A fortiori, he argues, he was denied due process under the Constitution of the United States, the Constitution of the Commonwealth of Pennsylva-

nia, as well as under the Pennsylvania Rules of Criminal Procedure. After closely reading the referenced rule, the rules contained in chapter 100 of the Pennsylvania Rules of Criminal Procedure and the comments appended thereto, we hold Rule 1100 does not apply to appeals from summary convictions of traffic violations before a district justice. We also note that defendant has not referred us to any cases which hold to the contrary.

Accordingly, we issue the following

### ORDER

And now, to wit, February 13, 1976, defendant's applications to quash citation are refused.